## DEAR PUBLICATION & RADIO, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63076.   Filed March 19, 1959.

*James F. Watson, Esq.*, and *John D. McMasters, Esq.*, for the petitioner.

*John J. Hopkins, Esq.*, for the respondent.

1170

## OPINION.

TURNER, *Judge:* In section 112(f) of the Internal Revenue Code of 1939,[1] it is provided that "[i]f property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted" into money, the gain is not to be recognized to the extent

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(f) INVOLUNTARY CONVERSION.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

(1) CONVERSION INTO SIMILAR PROPERTY.—Into property similar or related in service or use to the property so converted, no gain shall be recognized.

(2) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED PRIOR TO 1951. * * * For the purposes of this paragraph and paragraph (3), the term "disposition of the converted property" means the destruction, theft, seizure, requisition, or condemnation of the converted property, or the sale or exchange of such property under threat or imminence of requisition or condemnation.

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph :

(A) Nonrecognition of Gain.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary may by regulations prescribe. For the purposes of this paragraph—

(i) no property or stock acquired before the disposition of the converted property shall be considered to have been acquired for the purpose of replacing such converted property unless held by the taxpayer on the date of such disposition ; and

(ii) the taxpayer shall be considered to have purchased property or stock only

that the amount realized is, within 1 year after the year of conversion or at the close of such later date as the Secretary may designate, used to acquire property similar or related in service or use to the property converted. And for the purposes of section 112(f)(3), relating to the nonrecognition of gain where the disposition occurred after December 31, 1950, the term "disposition of the converted property" is defined to mean "the destruction, theft, seizure, requisition, or condemnation of the converted property, or the sale or exchange of such property under threat or imminence of requisition or condemnation."

Admittedly petitioner's Evening Journal Association stock was neither destroyed, stolen, seized, requisitioned, nor condemned. It was sold pursuant to agreement. It is the contention of petitioner, however, that the Newhouse suit and the order of the New Jersey court directing dissolution of the corporation constituted a threat or imminence of destruction in whole or in part, seizure, or requisition of its property interest therein as represented by the stock owned by it, and that the sale of the stock under such circumstances was a compulsory or involuntary conversion within the meaning of the statute, and to the extent the proceeds of the sale were expended in the purchase of stock in corporations engaged in the publishing of newspapers and in the purchase of the assets of a newspaper-publishing corporation the gain realized on the said sale of its Evening Journal Association stock is not to be recognized.

Aside from any question as to whether the court proceeding and order pursuant thereto may be construed as being a threat or imminence of destruction or seizure of petitioner's Evening Journal Association stock, the statute itself makes it clear, we think, that a sale in such circumstances is not an involuntary conversion within the meaning thereof, since under the definition of the term "disposition of the converted property" it is only where there is threat or imminence of requisition or condemnation that a sale or exchange under threat or imminence of any of the named causes of conversion is a conversion within the meaning of the statute. See and compare *George S. Robins*, 15 B.T.A. 1068, and *Philip F. Tirrell*, 14 B.T.A. 1399, wherein the words "threat or imminence thereof" in section

if, but for the provisions of section 113(a)(9), the unadjusted basis of such property or stock would be its cost within the meaning of section 113(a).

(B) Period Within Which Property Must Be Replaced.—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition on condemnation of the converted property, whichever is the earlier, and ending—

(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

(ii) subject to such terms and conditions as may be specified by the Secretary, at the close of such later date as the Secretary may designate upon application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary may by regulations prescribe.

214(a) (12) of the Revenue Act of 1921 [2] were held to relate only to an exercise of the power of requisition or condemnation.

Patently, a sale of property under threat or imminence of requisition is an involuntary conversion within the meaning of the statute, but in the instant case the facts do not, in our opinion, show a threat or imminence of requisition. Webster's New International Dictionary defines requisition as follows: "Act of requiring, or demanding, as of right; a demand or application made as by authority; specif., a formal application made by one officer or department to another for things needed in the service or business; as, a *requisition* for clothing, troops, money." The petitioner, in its argument, would have the definition end with the words "act of requiring, or demanding," its contention being that since the New Jersey court "had the 'right' under Revised Statute 14:13–15 of the New Jersey Corporation Law * * * to 'require' the dissolution of the Evening Journal Association and to 'require' a receiver to seize and liquidate Petitioner's property interest in the assets of that corporation," then this right was a power of requisition.

In view of the statutory context, we are unable to agree that such a broad usage of the term "requisition" was intended. The manner of its use in conjunction with the term "condemnation" convinces us that requisition as used in section 112(f) means the taking of property by governmental authority for public use. In *Filbin Corporation* v. *United States*, 266 F. 911, an action to recover compensation for property taken, the court, in comparing requisition to condemnation, said:

In ordinary parlance—perhaps in legal parlance—the word "requisition" is the more often used in reference to the taking of personal property, and the word "condemnation" to the taking of real estate. * * *

The court goes on to point out that the result of either is a compulsory taking of private property for public use. See also *Benedict* v. *United States*, 271 F. 714.

Under the New Jersey statute, the court is merely empowered to decree the dissolution of a corporation where the management and ownership is equally divided and in disagreement. In such a situation, there is no taking by governmental authority, much less a taking

---

[2] Sec. 214. (a) That in computing net income there shall be allowed as deductions:

* * * * * * *

(12) If property is compulsorily or involuntarily converted into cash or its equivalent as a result of (A) its destruction in whole or in part, (B) theft or seizure, or (C) an exercise of the power of requisition or condemnation, or the threat or imminence thereof; and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, or in the acquisition of 80 per centum or more of the stock or shares of a corporation owning such other property, or in the establishment of a replacement fund, then there shall be allowed as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds. * * *

for public purposes. There was no threat or imminence of a requisition in the instant case.

In *Philip F. Tirrell, supra,* the taxpayer sold his 50 per cent interest in a manufacturing corporation as a result of the threat of the corporation's creditors that if one of the two 50 per cent shareholders did not sell out to the other, the creditors would seek court action to have the corporation placed in a general receivership. The other 50 per cent shareholder offered either to buy the taxpayer's stock or to sell his own at a specified price. As the taxpayer was unable to raise the stated amount necessary to buy the stock of the other shareholder, he sold his own stock for that amount. He sought to qualify the transaction as an involuntary conversion as a result of the exercise of the power of requisition or condemnation, or the threat or imminence thereof. In denying that such a conversion was an involuntary conversion under the predecessor section to section 112(f), we held that "[n]o element of condemnation or the power of requisition or the threat or imminence thereof is present in this case."

While there are factual differences between the instant case and the *Tirrell* case, we believe that the rationale of that case supports our conclusion in the instant case.

Since we have concluded that the transaction here was not an involuntary conversion within the nonrecognition provisions of section 112(f), the question whether certain expenditures by petitioner qualified as the cost of replacement property need not be considered or decided.

*Decision will be entered for the respondent.*